IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

CHARLES A. WINSTON                                                                                              PLAINTIFF
ADC #84733

v.                                          No. 5:10CV00180 JLH-JJV

WENDY KELLY, Deputy Director
of Health Services, Arkansas
Department of Correction; *et al.*                                                                         DEFENDANTS

**OPINION AND ORDER**

Now before the Court is the partial recommended disposition submitted by United States Magistrate Judge Joe J. Volpe recommending that Charles Winston's claims against Jan Alexander, Robert Rectenwald, and Marie Austin be dismissed as untimely; that Winston's claims against James Blackmon be dismissed pursuant to Fed. R. Civ. P. 25(a); and that Winston's claims against Crystal Wood be allowed to proceed. Winston has objected to the recommendation that the claims against Alexander, Rectenwald, Austin, and Blackmon be dismissed, while Wood has objected to the recommendation that the claims against her be allowed to proceed. For reasons that will be explained, the Court adopts Judge Volpe's recommendations.

For purposes of this opinion, the Court accepts the following facts as true. Winston was an inmate in the Arkansas Department of Correction in 1997 and received an M-3 permanent medical classification. Winston returned to the ADC in 2000 and was classified as M-2. In April of 2006, he again returned to the ADC, and Alexander, who is a nurse, gave him a physical examination and classified him as M-1. With an M-1 classification, Winston was assigned to the "hoe squad" by Wood. He requested relief from Wood, to no avail. In April of 2007, Rectenwald, a medical doctor, noted that Winston was, at best, an M-2, but Austin, the director of nursing, informed Rectenwald that the classification could be changed only after a complete physical, and Winston was not due a

physical for two more years. Even so, on June 1, 2007, Rectenwald changed Winston's classification to M-2. With an M-2 classification, Winston continued to be assigned to work in the field. Finally, on September 25, 2008, a physician who is not a defendant in this case changed Winston's classification to M-3. Winston alleges that he was forced to do work that was beyond his physical capacity, and as a result he experienced significant pain and suffering.

The issues with respect to all of the defendants except Blackmon concern whether Winston's claims are barred by the statute of limitations. Two limitations issues are presented, one concerning when the claims accrued and one concerning whether the statute of limitations was tolled for a period of time. Winston contends that the wrongs done to him were continuing violations and therefore his claims did not accrue until September 25, 2008. He also contends that the statute of limitations was tolled while he exhausted the administrative process. Judge Volpe concluded that Winston's claims against Alexander, Rectenwald, and Austin were untimely and that Winston's claim against Wood was timely in part because the grievance against her was properly filed, tolling the limitations period.

In Arkansas, a three-year statute of limitations applies to claims brought under 42 U.S.C. § 1983. *Ketchum v. City of West Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992); *see also Bell v. Fowler*, 99 F.3d 262, 266 (8th Cir. 1996) ("The Supreme Court has instructed courts to apply the most analogous state statute of limitations to claims made under [§ 1983]."). Before they can bring an action challenging prison conditions under section 1983, however, prisoners are required to exhaust all available administrative remedies. 42 U.S.C. § 1997e(a); Ark. Code Ann. § 16-106-301 (1997); *Lyon v. Vande Krol*, 305 F.3d 806, 808 (8th Cir. 2002) (citing *Booth v. Churner,* 532 U.S. 731, 733-34, 121 S. Ct. 1819, 1821, 149 L. Ed. 2d 958 (2001)). Because of this mandatory exhaustion requirement, Arkansas law provides that the section 1983 "statute of limitations is tolled

during the period of time the application for the administrative remedies is pending." Ark. Code Ann. § 16-106-301; *see also Montin v. Estate of Johnson*, 636 F.3d 409, 413 (8th Cir. 2011) ("For a § 1983 action . . . the issue of equitable tolling, like the underlying statute of limitations, is determined by reference to state law.").

While state law governs the period of limitations and the tolling rules that apply, federal law governs when a cause of action under section 1983 accrues. *Wallace v. Kato*, 549 U.S. 384, 388, 127 S. Ct. 1091, 1095, 166 L. Ed. 2d 973 (2007). Under federal law, a cause of action accrues when a plaintiff has a complete and present cause of action, *i.e.*, when the plaintiff can file suit and obtain relief. *Id.* (citations omitted). Thus, a section 1983 claim accrues no later than when the plaintiff knows or has reason to know that he has been harmed. *Shomo v. City of New York*, 579 F.3d 176, 181 (2nd Cir. 2009).

As Winston correctly points out, pursuant to the prison mailbox rule, his complaint is deemed filed for statute of limitation purposes on the date he placed it in the prison mail system, which was June 6, 2010. Any claims that accrued before June 6, 2007, are therefore barred by the three-year statute of limitations unless the running of the statute was tolled for some period of time.

In her objections to Judge Volpe's recommended disposition, Wood argues that, under the Arkansas doctrine of equitable tolling. Winston must show that he was diligent in order to toll the running of the statute of limitations. *See Stracener v. Williams*, 84 Ark. App. 208, 213, 137 S.W.3d 428, 431 (2003). Wood contends that Winston was not diligent in pursuing his claim, so he cannot claim the benefit of equitable tolling.

In contrast, Winston argues that his claims against the defendants were tolled while he exhausted his administrative remedies, even though, except as to Wood, his grievances were untimely

under ADC policy or he failed to file a grievance at all.  *See* Document #2 at 28-32 (untimely grievance against Alexander); *id.* at 39-41 (untimely grievance against Rectenwald); *id.* at 50-52 (timely grievance against Wood).

    The Arkansas statute that controls this issue states:

> No action shall be brought with respect to prison conditions under Section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983), or any other federal law, by an incarcerated person . . . until such administrative remedies as are available are exhausted, provided, that the statute of limitations is tolled during the period of time the application for the administrative remedies is pending.

Ark. Code Ann. § 16-106-301.

    It would be inconsistent with section 16-106-301 to adopt Winston's argument that the statute of limitations was tolled while his untimely grievances were being processed.  The first purpose of the statute is to require that incarcerated persons exhaust their administrative remedies before filing an action pursuant to 42 U.S.C. § 1983.  On Winston's argument, a prisoner could allow the time for filing a grievance to expire and then toll the statute of limitations by filing an untimely grievance that would have no effect.  In essence, that would allow the statute of limitations to be tolled by a grievance that would not result in exhaustion of the administrative process.  Because Winston's grievances against Alexander and Rectenwald were untimely, they do not toll the statute of limitations.  *See Dubois v. Cockrell*, No. 7:02-CV-246, 2002 WL 32494521, at *2 (N.D. Tex. Oct. 29, 2002) ("The filing of an untimely grievance does not operate to restart the tolling of the statute of limitations."); *cf. Williams v. Chrysler Corp.*, 163 F.3d 183 (3d Cir. 1998) (untimely motion for administrative reconsideration did not toll relevant statute of limitations because a contrary ruling

would encourage late filings). The statue is not tolled against Austin because a grievance was never filed.[1]

On the other hand, Wood's argument is contrary to the plain language of the statute. She attempts to import into the statute a requirement from the Arkansas doctrine of equitable tolling that applies in a very different context.[2] The statute says, "The statute of limitations is tolled during the period of time the application for the administrative remedies is pending." Ark. Code Ann. § 16-106-301. That language permits no exception for instances where the incarcerated person does not exercise due diligence.

Most of Winston's response is devoted to his contention that pursuant to the continuing violation doctrine his claims did not accrue until his medical classification was changed to M-3 on September 25, 2008. As this Court has previously said, the Eighth Circuit has not addressed the issue of whether the continuing violation doctrine applies to a section 1983 action brought by a prisoner. Document #17 at 1. Even so, several circuits have held that the continuing violation doctrine may apply in contexts similar to this. *See Shomo*, 579 F.3d at 181-82; *Heard v. Sheahan*, 253 F.3d 316, 318-20 (7th Cir. 2001). Because the continuing violation doctrine would not save Winston's claims against Alexander, Rectenwald, and Austin, even if the Eighth Circuit were to hold that it applies in this context, the Court will assume without deciding that the doctrine applies.

The Sixth Circuit has adopted a three-part inquiry for determining whether a continuing violation exists.

---

[1] It does not appear from the record that Winston ever filed a grievance against Austin.

[2] *Stracener*, upon which Woods relies, was a fraudulent concealment case, and the court there held that the statute of limitations is not tolled for fraudulent concealment unless the plaintiff exercised reasonable diligence. 84 Ark. App. at 214, 137 S.W.3d at 432.

> First, the defendant's wrongful conduct must continue after the precipitating event that began the pattern . . . . Second, injury to the plaintiff must continue to accrue after that event. Finally, further injury to the plaintiffs must have been avoidable if the defendants had at any time ceased their wrongful conduct.

*Tolbert v. State of Ohio Dep't of Transp.*, 172 F.3d 934, 940 (6th Cir. 1999). Thus, "[a] continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." *Id.* (quoting *Nat'l Adver. Co. v. City of Raleigh*, 947 F.2d 1158, 1166 (4th Cir. 1991)); *see also Dixon v. Clem*, 492 F.3d 665, 672 (6th Cir. 2007). Accordingly, public school officials' "mere adherence to a discrete decision regarding [a child's] academic standing in the fall of 1987 . . . does not suffice to state a claim for a continuing violation when he was denied twelfth grade status in the fall of 1988." *Vandiver v. Hardin Cnty. Bd. of Educ.*, 925 F.2d 927, 930 (6th Cir. 1991).

Winston's claim of a continuing violation fails to satisfy the first element of the Sixth Circuit's inquiry, *i.e.*, that the defendant's wrongful conduct must continue after the precipitating event that began the pattern. Alexander saw Winston one time—on April 11, 2006. *See* Document #157 at 5-9. She gave him a physical and assigned him to the medical classification of M-1. She engaged in no wrongful conduct after that date. Rectenwald gave Winston a physical on June 1, 2007, and changed the classification from M-1 to M-2. *Id.* at 10. He did not engage in any wrongful conduct after that date. On April 17, 2007, Austin responded to an informal resolution and on April 23, 2007, and she told Rectenwald that he could not change Winston's medical class from M-1 to M-2 because he would need another physical but would not be eligible for another physical for two years. *Id.* at 7-8, 10. She engaged in no wrongful conduct after April of 2007. In short, neither Alexander, Rectenwald, nor Austin engaged in any wrongful act within three years before the date Winston placed his complaint in the prison mail system, which was June 6, 2010. Therefore, the continuing

violation doctrine does not save Winston's claims against any of them, even though Winston continued to suffer ill effects from their actions until September 25, 2008.

The only remaining issue has to do with Judge Volpe's recommendation that Blackmon be dismissed. Judge Volpe correctly notes that on September 8, 2011, a letter was filed with the Court stating that Blackmon passed away in May of 2010. According to Rule 25(a) of the Federal Rules of Civil Procedure, following a party's death, a motion to substitute the proper party must be made within 90 days of service of the statement noting the death. Winston's argument as to why the Court should not adopt Judge Volpe's recommendation is that he did not learn of Blackmon's death until the date of the hearing on May 8, 2012, and that he was unaware of what he should do because of his ignorance of the law. Local Rule 5.5(c)(2) provides, "[a]ny party proceeding *pro se* shall be expected to be familiar with and follow the Federal Rules of Civil Procedure." Winston's ignorance of the law does not excuse his failure to comply with the Federal Rules of Civil Procedure.[3] Moreover, even if it is true that he did not learn of Blackmon's death until May 8, 2012, he did not file a motion for substitution within 90 days thereafter. The objection on this point is without merit.

IT IS, THEREFORE, ORDERED that Charles Winston's claims against Jan Alexander, James Blackmon, Robert Rectenwald, and Marie Austin are dismissed. Winston's claims against Crystal Wood are not dismissed.

IT IS SO ORDERED this 15th day of February, 2013.

J. Leon Holmes
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE

---

[3] Notably, Winston has shown ample ability to research the law throughout this litigation.