**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

CHARLES A. WINSTON                                                                                      PLAINTIFF
ADC #84733

v.                                              5:10CV00180-JLH-JJV

WENDY L. KELLY, Deputy Director
of Health Services, Arkansas
Department of Correction; *et al.*                                                                DEFENDANTS

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Judge J. Leon Holmes. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a new hearing for this purpose before either the District Judge or Magistrate Judge, you must, at the time you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence to be proffered at the new hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.      The details of any testimony desired to be introduced at the new hearing in the form

of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing. Mail your objections and "Statement of Necessity" to:

>  Clerk, United States District Court
>  Eastern District of Arkansas
>  600 West Capitol Avenue, Suite A149
>  Little Rock, AR 72201-3325

## **DISPOSITION**

Charles Winston filed a *pro se* Complaint (Doc. No. 2) pursuant to 42 U.S.C. § 1983, alleging deliberate indifference to his medical needs with respect to his medical classification and treatment of foot ailments. Before the Court are two Motions for Summary Judgment (Doc. Nos. 168, 171) filed by Defendants Woods, Anderson, Griffin, and Taylor. Mr. Winston responded to both Motions. (Doc. No. 176.)

## **I.   SUMMARY JUDGMENT STANDARD**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the Court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient

probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

## II.    UNDISPUTED FACTS

Mr. Winston, an inmate in the Varner Unit of the Arkansas Department of Correction (ADC), advances two claims. First, he alleges that Defendants Woods, Taylor, and Griffin were deliberately indifferent to his serious medical needs by failing to ensure his medical classification met his actual physical abilities. Second, he alleges Dr. Anderson was deliberately indifferent to his serious medical needs by delaying treatment of his feet. The undisputed facts related to these claims are as follows.

### A.    Medical Classification

Mr. Winston suffers from blindness in his right eye, plantar warts, bunions, flat feet, and high blood pressure. (Doc. No. 2 at 7-8.) Over the past several years he has been in and out of prison. Upon his release in 1997, ADC doctors assigned him a permanent medical classification of M-3. (*Id.*) However, when he returned in 2000, he was assigned a medical classification of M-2. (*Id.*) In April 2006 during intake into the Cummins Unit, he had a physical examination and assigned a medical classification of M-1. (*Id.*) From April 12, 2006, to April 2, 2008, prison officials assigned Mr. Winston to manual labor (Doc. No. 178 ¶ 40) and he sought to remedy the issue through the grievance process. (Doc. No. 2 at 25-62.)

Mr. Winson received some relief on June 1, 2007, when Dr. Rectenwald reduced his medical

classification to M-2. (Doc. 173-4 at 1.) He was then transferred to the East Arkansas Regional Unit (EARU) and seen for hypertension by Nurse Taylor, the chronic care nurse, on November 11, 2007, February 15, 2008, and April 17, 2008. (Doc. No. 173 ¶ 31.) Mr. Winston states he continued to seek a lower medical classification, but the only documented request was during the April 17, 2008, appointment. (*Id.* ¶ 33; Doc. No. 173-4 at 2.) Because his classification had been recently changed and there was no new condition, Nurse Taylor concluded there was no need for another physical and reclassification. (*Id.* ¶ 34.) She also noted he had been seen the day before in the foot clinic and a change in his medical classification was not recommended. (*Id.* ¶ 39.) Nurse Taylor did not see Mr. Winston after April 17, 2008. (*Id.* ¶ 41.)

### B. Failure to Treat

On April 19, 2006, a nurse submitted a consultation request for Mr. Winston to undergo a footwear evaluation due to plantar warts and bunions. (Doc. No. 173 ¶ 12.) She noted that a size 13 EEE brogan shoe was ordered but they did not know whether the larger shoe would alleviate all of his foot discomfort. (Doc. No. 173 ¶ 13.) Dr. Anderson recommended a trial period with the brogan shoes to determine if there was still a need for further evaluation. (*Id.*)

Approximately two years later, a second consultation request was submitted. (Doc. No. 173 ¶ 20; Doc. No. 178 ¶ 66.) The request noted that Mr. Winston had "bunions and flat fee without relief from wearing brogans since 2006[.]" (Doc. No. 173 ¶ 20.) On July 14, 2008, Dr. Anderson examined Mr. Winston and noted he had flat feet and bunions with callouses from wearing brogan shoes. (*Id.* ¶ 22.) He prescribed a size 12 wide padded tennis shoe, and Mr. Winston received them on July 28, 2008. (*Id.* at ¶ 23.)

## III. ANALYSIS

### A. Defendant Woods's Motion for Summary Judgment (Doc. No. 168)

Ms. Woods argues that she is entitled to summary judgment as a matter of law because Mr. Winston is unable to demonstrate that she was deliberately indifferent to his medical needs. (Doc. No. 169 at 3.) She also asserts that his claims against her are barred by the statute of limitation and that she is entitled to sovereign and qualified immunity. (*Id.*) For the reasons discussed below, the Court finds Ms. Woods is entitled to summary judgment as a matter of law.

    1.    Statute of Limitations

On May 8, 2012, this Court held a motions hearing and heard arguments on the statute of limitations and continuing violation doctrine concerning Mr. Winston's claims. (Doc. Nos. 91, 103.) The Court allowed the parties to submit post hearing briefs in support of their positions. After careful review, this Court filed a partial recommended disposition recommending that the limitations period for Mr. Winston's claims against Ms. Woods be tolled while he exhausted administrative remedies and that his claims were not barred by the statute of limitations. (Doc. No. 156). The district judge adopted those recommendations. (Doc. No. 163.)

In her present Motion, Ms. Woods seeks to revisit this issue. The law of the case doctrine, however, precludes revisiting the issue. "When a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983); *Kinman v. Omaha Pub. Sch. Dist.*, 171 F.3d 607, 610 (8th Cir. 1999). The doctrine is a discretionary tool that aids a district court in the management of the legal issues that arise during litigation. *Conrad v. Davis*, 120 F.3d 92, 95 (8th Cir. 1997). The doctrine does not apply "when an intervening decision from a superior tribunal clearly demonstrates the law of the case was wrong. *Kinman*, 171 F.3d at 610 (quoting *Morris v. American Nat'l Can Corp.*, 988 F.2d 50, 52 (8th Cir. 1993)). Nor does the doctrine prevent a district court from reconsidering an earlier ruling that it now believes was reached in error. *Conrad*, 120 F.3d at 95.

Ms. Woods fails to present any new evidence suggesting that the decision concerning statute of limitations and tolling was wrong. The Court, therefore, concludes this argument is without merit.

### 2. Official Capacity Claims

Mr. Winston seeks monetary damages from Ms. Woods in her individual and official capacities. Ms. Woods argues that monetary claims against her in her official capacity are barred by the doctrine of sovereign immunity. The Eleventh Amendment bars suits against states for monetary damages. *Edelman v. Jordan*, 415 U.S. 651, 662-663 (1974); *Hadley v. North Ark. Cmty. Tech. Coll.*, 76 F.3d 1437, 1438 (8th Cir. 1996). Section 1983 does not override Eleventh Amendment immunity. *Hadley*, 76 F.3d at 1438. A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the state. *See Printz v. U.S.*, 521 U.S. 898, 930 (1997); *Hafer v. Melo*, 502 U.S. 21, 25 (1991). The Eleventh Amendment has thus been construed to also prohibit § 1983 suits seeking monetary damages from a state official in his or her official capacity. *See Treleven v. Univ. of Minn.*, 73 F.3d 816, 818 (8th Cir. 1996). Mr. Winston's claims for monetary damages against Defendant Woods in her official capacity are barred and she is entitled to summary judgment.

### 3. Deliberate Indifference to a Serious Medical Need

The Eighth Amendment, which applies to the States through the Due Process Clause of the Fourteenth Amendment, prohibits the infliction of "cruel and unusual punishments" on those convicted of crimes. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). Deliberate indifference to the serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (deliberate indifference includes intentional interference with prescribed treatment; inadvertent or negligent

6

failure to provide adequate medical care cannot be said to constitute "unnecessary and wanton infliction of pain"). "Deliberate indifference may include intentionally denying or delaying access to medical care, or intentionally interfering with treatment or medication that has been prescribed." *Vaughan v. Lacey*, 49 F.3d 1344, 1346 (8th Cir.1995). However, "[a] showing of deliberate indifference is greater than gross negligence and requires more than mere disagreement with treatment decisions." *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir.2006).

> The United States Court of Appeals for the Eighth Circuit has explained:
>
> Prison doctors and guards violate the Eighth Amendment when they act with 'deliberate indifference to [an inmate's] serious medical needs.' 'Deliberate indifference' entails a level of culpability equal to the criminal law definition of recklessness, that is, a prison official 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Likewise, an inmate's 'mere disagreement with the course of his medical treatment' fails to state a claim of deliberate indifference.

*Bender v. Regier*, 385 F.3d 1133, 1137 (8th Cir. 2004) (citations omitted).

A claim of deliberate indifference to medical needs must be brought against those directly responsible for the prisoner's medical care. *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997). Prison officials who are not involved in making treatment decisions and who lack medical expertise are not liable for decisions made by the prison's medical staff. *Id.*

Defendant Woods served as an ADC classification officer on the classification committee at the Cummins Unit. (Doc. No. 170 ¶ 2.) In his deposition, Mr. Winston testified:

> I made Ms. Woods aware of the fact that I was erroneously medically classified and that the infirmary had it wrong and that I wish she would go out and and (*sic*) investigate the situation because I do know from personal experience that classification officers can pull strings and do things. I wrote her letters, maybe one or two letters, and I never even got a response from her. Every -- every letter I wrote to all of the defendants I got copies of. And she didn't even attempt to -- to assist me

      at all. And I even in her response to some grievances, that's respected that's reflected. So that's why I wrote her up.

(Doc. 170-1 at 49.)

The evidence shows that classification was driven by Mr. Winston's medical records. Mr. Winston admits that Ms. Woods "was relying on the medical file" when making her decisions. (*Id.* at 54.) And Ms. Woods had no part in Mr. Winston's medical care or treatment. (*Id.* ¶ 3.) Because she was simply relying on the medical records when making her classification decisions, the Court finds that Mr. Winston fails to state a claim of deliberate indifference against Ms. Woods. Moreover, Mr. Winston's claim that "classification officers can pull strings and do things" (*Id.* at 49) wholly fails to rise to the level of deliberate indifference. For these reasons, the Court finds that Ms. Woods is entitled to summary judgment as a matter of law.

          4.       Qualified Immunity

Ms. Woods is also entitled to qualified immunity. Qualified immunity shields government officials performing discretionary functions from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

In analyzing this defense, the Court must consider whether plaintiff's factual allegations show that defendant's conduct 1) violated a statutory or constitutional right, and  2) that the right was "clearly established" at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011). Courts have discretion in deciding which of the two prongs of the qualified-immunity analysis to tackle first. *Id.* at 2080; *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Qualified immunity is a question of law, not a question of fact. *McClendon v. Story Cnty. Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are

appropriately resolved on summary judgment. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (the privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial"). But "if there is a genuine dispute concerning predicate facts material to the qualified immunity issue, there can be no summary judgment." *Nelson*, 583 F.3d at 528 (quoting *Tlamka v. Serrell*, 244 F.3d 628, 632 (8th Cir. 2001)).

As previously discussed, the Court finds Mr. Winston fails to establish that Ms. Woods violated his constitutional rights. Furthermore, prison officials such as Ms. Woods are entitled to rely on the opinion of medical staff regarding an inmate's diagnosis. *Holden v. Hirner*, 663 F.3d 336, 343 (8th Cir. 2011). The Court, therefore, finds Ms. Woods is entitled to qualified immunity and summary judgment is appropriate.

    **B.**    **Defendants Anderson, Taylor and Griffin's Motion for Summary Judgment**

In support of their Motion for Summary Judgment (Doc. No. 171), Dr. Anderson and Mr. Griffin argue that Mr. Winston's claims against them are time barred. (Doc. No. 172 at 3.) In the alternative, Defendants Anderson, Taylor, and Griffin argue that Mr. Winston fails to state a claim of deliberate indifference against them and they are, therefore, entitled to summary judgment as a matter of law. (*Id.* at 4.) For the reasons discussed below, the Court finds these defendants are entitled to summary judgment as a matter of law.

    1.    Time Bar

The limitations period for § 1983 claims is governed by the statute of limitations of the state in which the claims are filed. *Baker v. Chisum*, 501 F.3d 920, 922 (8th Cir. 2007); *Ketchum v. City of West Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992). In Arkansas, the limitations period for § 1983 claims is three years. *Baker*, 501 F.3d at 922; *Ketchum*, 974 F.2d at 82.

The Court previously held that Mr. Winston's claims prior to June 6, 2007, are barred by the statute of limitations, unless the running of the statute was tolled. (Doc. No. 163 at 3.) In Arkansas, a litigant must show that he was reasonably diligent in order to take advantage of the doctrine of equitable tolling. *Stracener v. Williams*, 84 Ark. App. 208, 213, 137 S.W.3d 428 (Ark. App. 2003).

    a.  Dr. Anderson

Mr. Winston's claims against Dr. Anderson relate to the delay in providing the foot clinic consultation request. The undisputed facts establish that a consultation request was submitted on April 19, 2006, and Dr. Anderson recommended that a larger brogan first be tried. (Doc. No. 173 ¶ 13.)

Dr. Anderson asserts that Mr. Winston was made aware of the deferral of the consultation request on or about May 22, 2006. (Doc. Nos. 2-1 at 32; 172 at 3.) Mr. Winston says he learned of the deferral during an April 16, 2008, doctor visit. (Doc. No. 178 ¶¶ 68, 69.) In his deposition testimony, Mr. Winston states he first learned of the deferral approximately eighteen months after it occurred. (Doc. No. 173-2 at 2-4.) So, the Court concludes that a genuine issue of fact exists as to when Mr. Winston first learned of the deferral of the consultation request and whether this claim is barred by the statue of limitations. The Court, therefore, finds that Dr. Anderson is not entitled to summary judgment on this issue.

    b.  Rory Griffin

The claims arising from Mr. Griffin's June 6, 2007, response to a grievance (Doc. No. 173 at ¶ 55) and the June 11, 2007, grievance against Mr. Griffin are not barred by the statute of limitations and he is, therefore, not entitled to summary judgment on this issue.

   2.  Deliberate Indifference to a Serious Medical Need

    a.  Dr. Anderson

Dr. Anderson was employed as the Regional Medical Director for Correctional Medical Service, Inc. (CMS), the ADC's private healthcare provider. (Doc. No. 173 ¶ 2.) Dr. Anderson argues he was not deliberately indifferent to Mr. Winston's serious medical needs.

In response to Mr. Winston's claim of delayed treatment for six months, Dr. Anderson states he did not recommend a specific length of trial period but wanted Mr. Winston to try the brogan shoes before additional treatment decisions were made. (Doc. No. 173-3 at 1.) He was not the unit doctor and, therefore, would not have seen Mr. Winston for reevaluation and was uninvolved in his treatment for the following two years. (*Id.* at 1-2.) Dr. Anderson next saw Mr. Winston on July 14, 2008, and prescribed tennis shoes to replace the brogan shoe. (*Id.*) Mr. Winston received the tennis shoes on July 31, 2008. (*Id.*)

It is reasonable for Mr. Winston to feel he had been treated with indifference. However, Dr. Anderson was not his doctor from 2006 to 2008. (Doc. No. 173-3 at 1.) Furthermore, when Dr. Anderson was his doctor, he exercised his medical judgment to first try the brogan shoe before providing further evaluation. And when Dr. Anderson reentered the picture on July 14, 2008, he provided treatment in prescribing a tennis shoe. To the extent that this claim is a mere disagreement on proper course of treatment, such claims are not actionable under § 1983. *Vaughn v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995.) Based on these facts, as a matter of law, Dr. Anderson was not deliberately indifferent to Mr. Winston's serious medical needs and he is entitled to summary judgment.[1]

    b.  Ella Taylor

---

[1]Dr. Anderson also argues that Mr. Winston cannot establish an injury. (Doc. 173 at 5.) A prisoner asserting a delay in treatment must also present verifying medical evidence to establish that the delay had a detrimental effect. *See Holden*, 663 F.3d at 342; *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006). Although Dr. Anderson provides a compelling argument, on this point, the Court finds material questions of fact remain.

11

Mr. Winston asserts that Ms. Taylor was deliberately indifferent to his serious medical needs when she refused to reclassify him. Ms. Taylor asserts that Mr. Winston's claim is merely a disagreement over his prescribed treatment. (Doc. No. 172 at 12.)

From 2007 to 2008, Ms. Taylor was employed by CMS as a registered nurse practitioner in the chronic care clinic at EARU. (Doc. No. 173-4 at 1.) She was not responsible for conducting physical exams or assigning medical classifications. (*Id.*) Between June 2007 and April 2008, she saw Mr. Winston three times for hypertension (*Id.*) and saw no new conditions that warranted a reclassification request. (*Id.*) Mr. Winston only mentioned his medical classification during his April 2008 visit. (*Id.* at 2.) He had seen a medical doctor the previous day and there was nothing to indicate a need for reclassification. (*Id.*)

In his Response, Mr. Winston challenges Ms. Taylor's credibility by asserting that he asked her at least ten times to correct his medical classification. (Doc. No. 177 at 10.) Credibility determinations, however, are not appropriate at the summary judgment stage. *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996)

Based on the evidence now before the Court, the Court finds that Mr. Winston fails to offer any proof suggesting that Ms. Taylor's refusal to reclassify him amounted to constitutional indifference. *See Bender*, 385 F.3d at 1137. Ms. Taylor has provided evidence showing her actions were based on her sound medical judgment. (Doc. Nos. 173-1, 173-4.) Accordingly, the Court finds that Ms. Taylor is entitled to summary judgment.

### c. Rory Griffin

Defendant Rory Griffin was the Health Services Administrator at the Cummins Unit and was responsible for management of non-clinical administrative matters. (Doc. No. 173 ¶ 5.) During his deposition, Mr. Winston testified:

> I complained to Mr. Griffin by letter. In passing he wouldn't give me the time of day. Ms. Wendy Kelley, when I would write and complain to her, she would state she would pass it on to Mr. Griffin. She would contact -- she would let Mr. Griffin know. And for her to say she would let Mr. Griffin know, that's what caused me to believe that she felt like Mr. Griffin has some type of power or responsibility to correct the situation, see to it that I got proper treatment. But he never did. And the time when since he never responded to my letters or requests, when I was in the infirmary one day and I saw him walk into his office, I went to the door and began to talk to him. And he didn't want to talk to me and had the officer to make me leave. If he had showed signs of wanting to talk to me, the officer would have let me go in for me to talk to him. But he wouldn't let me tell him my side of story about the pain and suffering I was experiencing and somebody needed to do something.

(Doc. No. 173-2 at 7.)

Mr. Griffin responded to three of Mr. Winston grievances. (Doc. No. 173 at ¶ 52.) His first response dated April 30, 2007, was about the removal of Mr. Winston's toenail. (*Id.* at ¶ 53.) The second dated May 31, 2007, confirmed that he had met with Mr. Winston and informed him that Dr. Blackmon was the unit's medical director and had final say regarding inmate care. (*Id.* at ¶ 54.) The third response dated June 6, 2007, informed Mr. Winston that though he had been seen by Drs. Blackmon and Rectenwald regarding his feet, neither had referred him to the foot clinic. (*Id.* at ¶ 55.)

Mr. Winston filed a grievance against Mr. Griffin regarding his medical classification. (Doc. No. 2 at 45.) He asserted that Mr. Griffin would not allow Dr. Blackmon to change/correct his medical classification. (*Id.*) Mr. Winston was informed throughout the grievance process that Mr. Griffin did not assign medical classifications and the doctors did not take directions from Mr. Griffin. (*Id.* at 45-49.) Prison officials who are not involved in making treatment decisions and who lack medical expertise are not liable for decisions made by the prison's medical staff. *Keeper*, 130 F.3d at 1314. Furthermore, to the extent that Mr. Winston is seeking to hold Mr. Griffin liable under a theory of respondeat superior, this is not a basis for liability under § 1983. *Royster v. Nichols*, 698

13

F.3d 681, 692 (8th Cir. 2012). The Court finds that Mr. Winston fails to state claim of deliberate indifference against Mr. Griffin. For this reason, Mr. Griffin is entitled to summary judgment.

## III. CONCLUSION

For the reasons stated above, the Court finds that the Defendants are entitled to summary judgment as a matter of law.

IT IS, THEREFORE, RECOMMENDED that:

1. The Defendants' Motions for Summary Judgment (Doc. Nos. 168, 171) should be GRANTED.

2. Plaintiff's Complaint (Doc. No. 2) should be DISMISSED with prejudice.

3. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from an order adopting this recommendation and the accompanying judgment would not be taken in good faith.

DATED this 28th day of May, 2013.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE